IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | |
|---|---|
| BERNARD DEUNDRE HALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 324-064 |
| | ) |
| STATE D.O.C.; MR. RICKY WILCOX, Warden; SGT. MS. JONES; LT. MS. HARRIS; LT. MS. MELBA CHAMBERS; MS. HUNT, Unit Manager; MR. JACKSON, Warden; MS. KEITH, Warden Care of Treatment; SGT. MS. APRIL BROWN; SGT. MR. GAINS; INMATE JEFFER MEYERS; and SGT. MR. EARL WRIGHT, | ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, currently incarcerated at Telfair State Prison ("TSP"), in Helena, Georgia, filed this case pursuant to 42 U.S.C. § 1983. He is proceeding *pro se* and *in forma pauperis* ("IFP"). Because he is proceeding IFP, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

**I.    SCREENING THE COMPLAINT**

   **A.    BACKGROUND**

In his complaint, Plaintiff names as Defendants: (1) State D.O.C., (2) Mr. Ricky Wilcox, Warden, (3) Sgt. Ms. Jones, (4) Lt. Ms. Harris, (5) Lt. Ms. Melba Chambers, (6) Ms. Hunt, Unit Manager, (7) Mr. Jackson, Warden, (8) Ms. Keith, Warden Care of Treatment, (9)

Sgt. Ms. April Brown, (10) Sgt. Mr. Gains, (11) Inmate Jeffer Meyers, and (12) Sgt. Mr. Earl Wright.  (Doc. no. 1, pp. 1, 4.)  Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On June 23, 2024, Plaintiff and an inmate named Jeffer Meyers were involved in a physical altercation in their shared cell after Inmate Meyers told Plaintiff "what [he] can and can't do [i]n the cell."  (Id. at 5, 7.)  Later that day, Plaintiff attempted to inform the nursing staff he required medical attention following the physical altercation and showed the nursing staff his blood-stained sheets as evidence of his injury.  (Id. at 7.)  However, Defendant Lt. Melba Chambers responded that there was nothing wrong with Plaintiff, so Plaintiff remained in his cell.  (Id.)

On June 25, 2024, Plaintiff and Inmate Meyers again engaged in a physical altercation in their cell.  (Id.)  Inmate Meyers stabbed Plaintiff in the eye several times with a pen; stabbed Plaintiff in the head, legs, and back; and hit Plaintiff in the face with a tray several times.  (Id. at 5, 7.)  Plaintiff was sent to Fairview Park Hospital, where he received x-rays and was diagnosed with a fracture under his right eye, a fracture on the left side of his nose, and damage to his eye.  (Id. at 5.)  Plaintiff remains unable to see out of his right eye as of the drafting of his complaint.  (Id.)

Plaintiff indicates he filed a grievance concerning this incident but the grievance has not yet been processed, as he is "waiting on them to reply back."  (Id. at 3.)  Plaintiff requests monetary damages, a declaratory judgment, and equitable relief.  (Id. at 6.)

**B.    DISCUSSION**

    **1.    Legal Standard for Screening**

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails

to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (*per curiam*) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*); Haines v. Kerner, 404 U.S. 519, 520 (1972) (*per curiam*). However,

this liberal construction does not mean that the Court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2. Plaintiff Fails to State a Claim Upon Which Relief May Be Granted Because He Did Not Exhaust Administrative Remedies

#### a. The Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Dismissal for failure to state a claim is appropriate if it is clear from the face of a complaint that the plaintiff failed to exhaust administrative remedies. See Jones v. Bock, 549 U.S. 199, 215 (2007); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (*per curiam*); Solliday v. Federal Officers, 413 F. App'x 206, 208 (11th Cir. 2011) (*per curiam*); Anderson v. Donald, 261 F. App'x 254, 256 (11th Cir. 2008) (*per curiam*). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998). Rather, "[t]his provision entirely eliminates judicial discretion and instead mandates strict exhaustion, 'irrespective of the forms of relief sought and offered through administrative avenues.'" Johnson v. Meadows, 418 F.3d 1152, 1155 (11th Cir. 2005) (citing Booth v. Churner, 532 U.S. 731, 741 n.6 (2001)).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the

administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way.  Id. at 90 (internal quotation omitted).  If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims.  Johnson, 418 F.3d at 1159.

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit.  Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).  Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective."  Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326.  Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'"  Johnson, 418 F.3d at 1155, 1156.  "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit."  Porter, 534 U.S. at 524.

### b.      Administrative Grievance Procedure

The administrative grievance procedure is governed by the version of the Georgia Department of Corrections ("DOC") Standard Operating Procedure that resulted in the promulgation of Policy Number ("PN") 227.02, which became effective May 10, 2019.[1]  The Statewide Grievance Procedure is available to all offenders in the DOC, and if a grievance is filed in reference to a different facility than that of the offender's current place of incarceration,

---

[1] DOC policies cited herein are publicly available on the DOC web site.  See https://gdc.georgia.gov; *follow* link for Policies & Procedures under "About GDC" menu option; then *click on* Facilities Division and find link for desired PN (last visited December 3, 2024).

the grievance coordinator at the current facility notifies the grievance coordinator at the originating facility for screening and processing. PN 227.02 §§ I and IV(E)(5). "Facilities shall continue to screen and process grievances of Offenders who were subsequently released or transferred from the facility after the grievance was filed." Id. § IV(E)(8). Once the warden's response is entered by the originating facility, the prisoner will be notified at the current facility via Kiosk/Tablet, or if not accessible, then notification will be done in writing. Id. § IV(E)(5).

The grievance procedure has two steps: (1) Original Grievance, and (2) Central Office Appeal. Id. § IV(C). The administrative remedies procedure commences with filing an Original Grievance via the Kiosk/Tablet or with a counselor. Id. § IV(C)(1)(c) & (d). The inmate has ten calendar days "from the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance. Id. § IV(C)(1)(b). The timeliness requirements of the administrative process may be waived upon a showing of good cause. Id. and § IV(C)(1)(e)(ii)(2). Good cause is defined as "[a] legitimate reason involving unusual circumstances that prevented the Offender from time filing a grievance." Id. § III(H). "Examples include: serious illness, being housed away from a facility covered by this procedure (such as being out on a court production order or for medical treatment)." Id. The grievance coordinator screens the grievance to determine whether to accept it for processing or recommend the Warden reject it. Id. § IV(C)(1)(e)(i).

The policy requires the Warden provide a response to the prisoner who filed the grievance within forty calendar days from submission of the original grievance; a onetime ten-calendar-day extension may be granted. Id. § IV(C)(1)(f)(v). If the grievance is rejected, or if the time allowed for a response to the grievance has expired without action, the offender

may proceed to step two of the grievance process, a central office appeal. <u>Id.</u> § IV(C)(1)(e)(v) & (c)(1)(f)(viii); § IV(C)(2). The inmate has seven calendar days from the date he receives the Warden's response to the grievance to file a central office appeal, but this time limit may be waived for good cause. <u>Id.</u> § IV(C)(2)(b). The Commissioner or his designee then has 120 calendar days after receipt of the grievance appeal to deliver a decision to the prisoner who filed the appeal. <u>Id.</u> § IV(C)(2)(e). If the central office appeal results in a determination the original grievance should have been accepted by the facility and processed, the grievance will be returned to the facility for investigation, and the Warden has fifteen calendar days from receipt of the returned grievance to give a decision to the prisoner who filed the grievance. <u>Id.</u> § (C)(2)(g). The prisoner has seven calendar days from receipt of the Warden's second response to file a second central office appeal. <u>Id.</u>

      c.     **Plaintiff's Failure to Exhaust**

In his complaint dated July 16, 2024, Plaintiff states he filed a grievance but was still "waiting on them to reply back" and notes "it take[s] 40 working days to get back a reply." (Doc. no. 1, p. 3.) Having failed to receive a response to his original grievance in less than the allotted forty days for the Warden to respond, Plaintiff executed and filed his pleading that launched this case. Furthermore, the face of Plaintiff's pleading makes clear he did not complete the two-step grievance process prior to filing his federal lawsuit. That is, Plaintiff improperly short-circuited the grievance process not only by filing his lawsuit prior to the expiration of the time allowed for the Warden to respond, but also because he did not file an appeal, even if the time for the Warden to respond to the original grievance had expired.

Allowing Plaintiff to decide for himself to bypass the grievance process defeats the rationale behind requiring "proper exhaustion":

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . . For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

Woodford, 548 U.S. at 95; see also Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (*per curiam*) ("To satisfy the exhaustion requirement, a prisoner must complete the administrative process in accordance with the applicable grievance procedures set by the prison.").

Similarly here, allowing Plaintiff to proceed in federal court despite his decision to short-circuit the grievance process by not waiting for a response to his original grievance or filing an appeal of any unsatisfactory response would defeat the aims of PLRA to review the merits of a prisoner's claim(s), and would not promote "the corrective action that might have obviated the need for litigation, . . . filter . . . potential frivolous claims, . . .[or] develop[] . . . an administrative record to assist the courts in deciding the controversy." Johnson, 418 F.3d at 1159. The PLRA requires proper exhaustion of available administrative remedies prior to filing a federal lawsuit, which includes a requirement for compliance with procedural rules governing prisoner grievances. Id. Additionally, because proper exhaustion of administrative remedies is a "precondition" to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure *before* initiating this suit. Higginbottom, 223 F.3d

8

at 1261. It is plain from the face of Plaintiff's complaint, indeed he concedes, that he failed to complete the entire grievance process prior to commencing this case because he did not wait for a response to his original grievance, let alone file a central office appeal regarding any potential mishandling of the original grievance.

In sum, Plaintiff did not properly exhaust his available administrative remedies, and therefore, the complaint fails to state a claim upon which relief can be granted. See Solliday, 413 F. App'x at 208 ("A claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted."); Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (*per curiam*) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted).

## II.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's complaint be **DISMISSED** without prejudice for failure to exhaust administrative remedies and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 4th day of December, 2024, at Augusta, Georgia.

*/s/ Brian K. Epps*
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA